IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**LECHEEK NUTRITION, INC.**                                          **PLAINTIFF**

v.                          Case No. 3:17-cv-3011

**THERMOLIFE INTERNATIONAL, INC.;**
**RONALD KRAMER; and STANFORD UNIVERSITY**
                                                                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are a Motion to Dismiss for lack of personal jurisdiction and for failure to state a claim (Doc. 12), Brief in Support (Doc. 13), and Supporting Exhibits (Doc. 13-1) submitted by Defendants Thermolife International, Inc. ("Thermolife"), Ronald Kramer ("Kramer"), and Stanford University ("Stanford"). Plaintiff Lecheek Nutrition ("Lecheek") has filed a response in opposition (Doc. 17). The Court heard oral argument during a case management conference held on September 13, 2017. For the reasons given below, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**. The case is, accordingly, **DISMISSED WITHOUT PREJUDICE**.

### I. BACKGROUND

Plaintiff Lecheek, an Arkansas corporation, alleges that Defendants Thermolife, its proprietor or CEO Ronald Kramer, and Stanford University have engaged in what amounts to a fraudulent patent licensing scheme. According to Plaintiff, Thermolife and Kramer purchase patent rights from Stanford University and then, through the sending of cease-and-desist letters threatening patent infringement litigation (or through actual litigation), "extort companies in the marketplace into paying 'licensing fees' to [Thermolife] for the permission to continue manufacturing and selling companies' already existing

1

products that allegedly infringe on [Thermolife] and [Kramer's] patents and applications." (Doc. 1, ¶ 1).

Unfortunately for Plaintiff, this is not its first interaction with Thermolife. For, back in 2012, Thermolife sued Lecheek and a number of other companies in the Central District of California claiming that their products were violating a Thermolife patent. Although that patent, which was later invalidated, is not the subject of the present case, it is obvious that this history of litigation between the two parties has led to a considerable amount of frustration on Plaintiff's part. Thus, when Plaintiff received a cease-and-desist letter from Thermolife and Kramer alleging that Plaintiff's products infringed upon three separate patents owned by Thermolife, it filed the present lawsuit.

Rather than seeking a declaratory judgment that those three patents are invalid or that its products do not infringe upon those patents, Plaintiff contends that Defendants' use of the postal service and CM/ECF system to send cease-and-desist letters and file infringement lawsuits amounts to mail and wire fraud that is actionable under a number of causes of action, including Civil RICO, conspiracy, and fraud. Defendants deny these allegations and assert that they, as Arizona and California citizens, are not subject to personal jurisdiction in the Western District of Arkansas.

## II. LEGAL STANDARD

"To allege personal jurisdiction, a 'plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration omitted). The Court "must view the evidence in the light most favorable to the

plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). However, the Plaintiff bears the burden of proving sufficient facts to support a prima facie showing of personal jurisdiction. *Id.* Importantly for the present case, personal jurisdiction must be assessed with regard to each defendant. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

There are two parts to any personal jurisdiction analysis: determining whether the state's long-arm statute permits service of process and analyzing whether there are sufficient minimum contacts with the forum such that maintaining the action would not violate due-process. As to the first, the Arkansas long-arm statute authorizes the exercise of personal jurisdiction to the maximum extent permitted by the Due Process Clause of the Fourteenth Amendment. Ark. Code Ann. § 16-4-101(B); *see also Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). As a result, whether this Court can exercise personal jurisdiction over these Defendants will depend upon whether they have sufficient contacts with Arkansas such that maintaining this suit here would comport with due process. *Dever*, 380 F.3d at 1073.

The Due Process Clause allows courts to exercise personal jurisdiction only when a defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This standard "presaged the development of two categories of personal jurisdiction": general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

General jurisdiction allows a court to hear "any and all claims" against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). In the case

3

of a defendant corporation, the Due Process Clause permits a court to exercise general jurisdiction only when the defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (internal quotation marks omitted). "The place of incorporation and principal place of business" are the "paradigm bases for general jurisdiction" over a corporation. *Daimler*, 134 S. Ct. at 760 (alteration and internal quotation marks omitted).

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (alteration and internal quotation marks omitted). Its exercise is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted). As the Supreme Court has noted, before a court may exercise specific jurisdiction over an out-of-state defendant, "the defendant's suit-related conduct must create a *substantial connection* with the forum State." *Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis added).

The Eighth Circuit has crafted a five-part test to help district courts determine whether a defendant has sufficient minimum contacts with the forum: (i) the nature and quality of contacts with the forum state; (ii) the quantity of such contacts; (iii) the relation of the cause of action to the contacts; (iv) the interest of the forum state in providing a

forum for its residents; and (v) the convenience of the parties. *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The last two factors are of secondary importance, *id.*, and the third factor applies only in the specific jurisdiction context. *See Wilcosky v. Swift Trans. Corp.*, 2008 WL 2562959, at *2 (W.D. Ark. June 24, 2008); *see also Digi-Tel Holdings*, 89 F.3d 519, 522 n.4 ("This third factor distinguishes whether the jurisdiction is specific or general.").

### III. DISCUSSION

As an initial matter, the Court would note that Plaintiff conceded during oral argument that general jurisdiction in this case does not exist over any of the Defendants. This concession is well-received because no Defendant is a citizen of Arkansas, no Defendant has a principal place of business here, and no Defendant is alleged in the Complaint to have had even a few minor contacts in or with the forum, much less to have the type of continuous and systematic contacts necessary for general jurisdiction. *Goodyear*, 131 S. Ct. at 2851. Thus, general jurisdiction over any of these Defendants is precluded, and this Court may retain jurisdiction over this case *only* if the requirements for specific personal jurisdiction are met. Because personal jurisdiction is an individual, not a collective, inquiry, the Court will analyze the jurisdictional factors above with respect to each Defendant to determine whether it may exercise specific jurisdiction.

#### A. Stanford University

As noted above, the Eighth Circuit has employed a five-factor test to determine whether personal jurisdiction exists. The first three prongs of the test—namely, the nature and quality of the contacts, quantity of such contacts, and relation of the cause of action to those contacts—have been held out as the most important.

5

The Court need not analyze each of these factors with respect to Stanford University because it is clear that, at a minimum, they *presuppose at least one contact with the forum*. Plaintiff's Complaint contains no allegations that Stanford University has ever had even a single contact with Arkansas. Indeed, the only contact with Arkansas alleged in the Complaint *at all* is a cease-and-desist letter sent by "agents of Defendants THERMOLIFE and KRAMER to companies including Plaintiff and its wholly owned subsidiaries." (Doc 1, ¶ 30). Stanford enters the Complaint only by way of Plaintiff's allegations that Stanford's Office of Technology Licensing has sold patent licenses to these Defendants, including the patents that were the subject of the cease-and-desist letter that prompted this litigation.[1] However, even if that is true, it does not explain how an Arkansas court would have personal jurisdiction over a California-based university that has not been alleged to have done anything to purposefully direct its activities toward the forum state. Plaintiff's counsel admitted during oral argument that Stanford University had not done anything to avail itself of an Arkansas forum. Thus, there is no *substantial connection* between Stanford University and Arkansas, and this court cannot exercise specific jurisdiction over Stanford in this case. While Plaintiff would certainly like to litigate its claims against Stanford here and the state of Arkansas has an interest in protecting its citizens, these facts cannot substitute for a lack of contacts. *Digi-Tel Holdings*, 89 F.3d at

---

[1] The Defendants request that the Court take judicial notice of United States Patent and Trademark Office ("USPTO") registration documents for the three patents listed in the cease-and-desist letter to rebut Plaintiff's allegations concerning Stanford's involvement with this case. Although it is likely that the Court could take judicial notice of this information, it will decline to do so here because, even if Stanford did own these patents and license them to Thermolife and Kramer, it does not get the Plaintiff any closer to showing how this activity establishes personal jurisdiction over these Defendants in Arkansas.

525 ("Minnesota's interest in providing its residents with a forum cannot make up for the absence of minimum contacts.").

## B. Thermolife

The first step in ascertaining whether specific personal jurisdiction exists over Thermolife involves applying the factors identified by the Eighth Circuit. The instant litigation grew out of a single cease-and-desist letter that was sent to Plaintiff, an Arkansas corporation, by Thermolife and its Proprietor or CEO Ronald Kramer. But, while the contact alleged was only a single contact, its relation to this cause of action could not be closer. In fact, this letter is the *only* reason the case is presently before this Court. Thus, this contact may be sufficient under the Eighth Circuit's test to constitute minimum contacts. As such, the Court is compelled to move to step-two of the Due Process inquiry, which concerns whether maintaining this action comports with notions of fair play and substantial justice.

Courts that have considered whether a cease-and-desist letter sent to an accused patent infringer in a particular jurisdiction is sufficient to confer personal jurisdiction in that jurisdiction have decided that it is not. Of course, the leading case for this proposition has, because of the patent context, come from the Federal Circuit. In *Red Wing*, the Federal Circuit held that "a patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (holding that three cease-and-desist letters were insufficient to create personal jurisdiction). The Federal Circuit reasoned that although the sending of the letter into the forum would likely constitute sufficient minimum contacts, thus satisfying the first step of

the Due Process inquiry, allowing the case to proceed solely on the basis of a cease-and-desist letter would not comport with traditional notions of fair play and substantial justice. *Id.* at 1360-1361. Courts around the country have ruled similarly. *See, e.g., Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) ("A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter."); *Catalyst Medium Four, Inc. v. CardShark, LLC*, 2015 WL 1412951, at *4 (W.D. Tex. Mar. 26, 2015) (dismissing for lack of personal jurisdiction).

The rationale, of course, is related to the public policy justifications that undergird the protection of patentees in the first place. Were a patentee to be subject to a court's personal jurisdiction solely by sending a cease-and-desist letter to that jurisdiction, patentees would feel a considerable amount of apprehension about contacting would-be infringers to stop infringement. Our patent laws will not countenance that approach as it would erode the protections Congress sought to provide patent holders.

Plaintiff's counsel conceded during oral argument that the cease-and-desist letter alone was insufficient to confer personal jurisdiction, but believed that there were enough additional connections to Arkansas listed in the Complaint to justify personal jurisdiction. Upon inquiry by the Court as to where those allegations appeared in the Complaint, Plaintiff's counsel suggested several sections, including parts alleging that: 1) Defendants have brought a number of prior lawsuits in bad faith, 2) that they have had past patents invalidated, and 3) that Defendants have already litigated against Plaintiff in a prior case in the Central District of California which negatively affected workflow at Plaintiff's plant in Arkansas.

But, these allegations, alone or in tandem, are insufficient to establish personal jurisdiction in *Arkansas*. Indeed, in the few cases where a cease-and-desist letter coupled with other connections to the forum were sufficient to establish personal jurisdiction, those other activities that tipped the personal jurisdiction inquiry in the plaintiff's favor were contacts such as extensive negotiations with entities that took place in the forum state, visits to the forum state, and granting of an exclusive license that contemplated further transactions to be carried out in the forum state. *See Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343, 1351-52 (Fed. Cir. 2002) (citing cases where there were sufficient other contacts besides a cease-and-desist letter to justify personal jurisdiction).

There are no such additional factors here. Beyond the cease-and-desist letter, the only connection to Arkansas that can be gleaned from the Complaint is that this is where the Plaintiff resides. But, allowing personal jurisdiction on that basis would fundamentally change the nature of the inquiry. For, personal jurisdiction centers on the Defendant's contacts with the *forum*, not its contacts with the Plaintiff. *See, e.g., Walden v. Fiore*, 134 S. Ct. at 1122; *see also Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n.6 (8th Cir. 1977) ("It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident."). The fact that the Plaintiff has, at one time, litigated against these Defendants in California does not establish the substantial connection to Arkansas necessary for specific jurisdiction. Moreover, that Defendant knew, either from prior litigation or through sending a cease-and-desist letter, that some effect would be felt in Arkansas is also insufficient. *Mountaire Feeds, Inc. v. Agro Impex., S.A.*, 677 F.2d 651, 656 (8th Cir. 1982)

("[F]oreseeability (of an impact within the forum state) alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.") (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Because no additional contact with the forum has been alleged in the Complaint, there is no substantial connection between Thermolife and Arkansas that would justify specific jurisdiction.

### C. Ronald Kramer

Although the Court has not had the benefit of Defendants' Answer to clarify Ronald Kramer's relationship with Thermolife, there is nothing in the Complaint which warrants a different conclusion on the personal jurisdiction analysis from the one given above for Thermolife. The same Arkansas contact, the cease-and-desist letter, that was insufficient for Thermolife is also insufficient as to Kramer, and Kramer's additional activities outside of Arkansas are just as meaningless to establishing jurisdiction in Arkansas as they were for Thermolife.

Plaintiff suggested during oral argument that perhaps it would be best for it to seek to amend its Complaint before the Court ruled on the motion to dismiss for lack of personal jurisdiction. Upon further inquiry, it became clear that Plaintiff would seek to add more detailed information about an apparent history of phone calls and emails regarding other allegations of patent infringement that have colored the relationship between the present parties. The Court will decline that request for a couple of reasons. First, it is unclear to the Court what difference there is between a cease-and-desist letter in the current case, which has been held to be insufficient to establish personal jurisdiction, and these emails or phone calls, all of which, similar to a cease-and-desist letter, were sent by Thermolife to alert Lecheek about possible infringement of other Thermolife patents. If a cease-and-

desist letter is not enough, then surely a cease-and-desist letter dressed in different garb is insufficient as well.

More importantly, though, Plaintiff had no answer as to how to square its argument with a long string of case law from the Eighth Circuit that holds that even numerous phone calls, emails, and letters do not, on their own, suffice to establish the substantial connection between the Defendant and the forum state necessary for personal jurisdiction. *See, e.g., Digi-Tel Holdings*, 89 F.3d at 523 ("[A]lthough letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction."); *see also Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) (affirming a 12(b)(2) dismissal for lack of personal jurisdiction "notwithstanding the numerous phone calls and letters that were exchanged between the parties").[2] Thus, Plaintiff's request to amend its Complaint to add a history of letters and calls to its one currently alleged letter does nothing to tip the personal jurisdiction inquiry in its favor.

In sum, the allegations in Plaintiff's Complaint, if true, are great examples of why accused infringers become exasperated by the perceived litigiousness of certain patent holders. What they are *not*, however, are allegations sufficient to establish personal jurisdiction over these Defendants in this Court. For these reasons, Defendants' Motion

---

[2] In fact, beyond these two cases, the Court has found an unbroken line of Eighth Circuit cases, dating back to 1977, standing for the proposition that numerous letters, calls, and emails are not enough, standing alone, to justify personal jurisdiction. *See, e.g., Aaron Ferer & Sons v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 453 (8th Cir. 1977) (affirming 12(b)(2) dismissal despite numerous telephone calls and mailings); *T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Ass'n of Salina, Kan.*, 749 F.2d 523, 525 (8th Cir. 1984) ("The district court properly concluded that the use of interstate mail, telephone or banking facilities, standing alone, was insufficient to satisfy the requirements of due process."); *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 824 (8th Cir. 2014) (holding that numerous emails and phone calls to the forum were insufficient to create the substantial connection necessary for personal jurisdiction).

to Dismiss on the basis of Rule 12(b)(2) is **GRANTED**. Because the Court finds that it lacks personal jurisdiction over any of these Defendants, it is unnecessary to reach the question of whether the Complaint is sufficient to state a claim under Rule 12(b)(6).

As a final matter, Defendants have moved for an award of attorneys' fees pursuant to Ark. Code Ann. § 16-22-309. That statute, in limited circumstances, allows a court to award fees to a party when a court determines that there was a complete absence of a justiciable issue of law or fact raised by the losing party. However, the Court need not go past the first sentence to find that this statute would not permit fees here, as a precondition of any award under the statute is a "court having jurisdiction". Ark Code Ann. § 16-22-309. Because the Court finds that it lacks jurisdiction over this matter, this section is inapplicable and Defendants' request for fees will be **DENIED**.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED THAT** Defendants' Motion to Dismiss (Doc. 12) is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** with respect to the issue of dismissing for lack of personal jurisdiction, but **DENIED** as to the request for attorney's fees pursuant to Ark. Code Ann. § 16-22-309. The case is, accordingly, **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** on this 2nd day of October, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE